# MELLEN *v.* MOLINE MALLEABLE IRON WORKS.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED · STATES FOR THE NORTHERN DISTRICT OF ILLINOIS.

No. 250. Argued April 16, 1889. — Decided May 13, 1889.

A suit instituted by a creditor of a corporation, on his own behalf and on behalf of other unsecured creditors, to set aside a conveyance of its real estate and a mortgage of its personal property, both made by the corporation in trust to secure certain preferred creditors, including among them a director of the corporation, and also to procure a dissolution of the corporation, and the closing up of its business, is a suit brought to remove an incumbrance or lien or cloud upon the title to such property within the meaning of § 8 of the act of March 3, 1875, 18 Stat. 472, c. 137, which authorizes a Circuit Court of the United States to summon in an absent defendant, and to exercise jurisdiction over his rights in the property in suit within the jurisdiction of the court.

Statement of the Case.

It is not necessary that the creditor of an insolvent corporation should obtain judgment on his claim, and take out execution and exhaust his remedies at law, in order to invoke the jurisdiction of a court of equity in his favor to remove an incumbrance or cloud or lien upon the title of the corporation's property, under the act of March 3, 1875, 18 Stat. 470, c. 137.

An adjudication that a particular case is of equitable jurisdiction is not void, even if erroneous, and cannot be disturbed by a collateral attack.

A sale of the trust property which is in dispute in a cause pending in a court of equity, made by the receiver by order of court, and after full compliance with its directions as to notice, is not open to attack by one who is subsequently summoned into the suit, if there has been no fraud, no sacrifice of the property, or no improvidence; since the proceeds of the sale take the place of the property, and all his rights in the latter are transferred to the former.

The proceedings in this case to remove the incumbrance upon the property of the Moline Iron Works, which are set forth and described in the opinion of the court, conformed to the requirements of the act of March 3, 1875, 18 Stat. 470.

Purchasers of property involved in a pending suit may be admitted as parties, in the discretion of the court; but they cannot demand, as of absolute right, to be made parties, nor can they complain if they are compelled to abide by whatever decree the court may render, within the limits of its power, in respect to the interest their vendor had in the property purchased by them *pendente lite.*

THIS was an appeal from a final decree sustaining a plea in bar to a suit brought by the appellants, and dismissing their bill of complaint for want of equity.

On the 23d of June, 1883, the Moline Malleable Iron Works, an Illinois corporation doing business at Moline, in that State, executed a deed, which was duly acknowledged and recorded, conveying to Charles F. Hemenway several lots or parcels of land in that city. The deed recited that S. W. Wheelock and A. L. Carson had been induced by the grantor, which was in need of money to carry on its business, to guarantee, by indorsing, its commercial paper to the extent of $49,000, (of which $48,500 was then outstanding and unpaid,) by the promise to protect the same by a lien on those premises; and that George H. Hill, of Ohio, and the J. S. Keator Lumber Company, had been induced by it to guarantee, in the same way, other of its commercial paper, the former to the extent of $20,000, and the latter to the extent of $1000. It also recited

that the grantor had agreed with each of the guarantors to meet said paper as it fell due, so that neither of them should be subjected to any liability, loss, cost, damage, or expense, by reason of having severally made such guarantees or indorsements. The conveyance to Hemenway was in trust to secure and protect said guarantors, respectively, against all liability arising from such indorsements, with power in the trustee, upon the request of either guarantor, or of his legal representatives — if, at the time of such request, there existed any liability upon the part of the person so requesting — to foreclose the deed and sell and convey the property, and out of the proceeds, after paying the expenses of foreclosure and sale and reasonable solicitors' fees, to pay the guarantors all costs, damages and expenses to which they may have been subjected; "it being the intention that the property conveyed hereby shall be understood to be for and shall stand for security to each of the parties aforesaid, viz., Wheelock, Carson, Hill and Keator Lumber Company, alike in proportion to the ultimate liability to which each may be subjected; and that they shall receive the benefit and protection, *pro rata*, according to the extent of their liability and in proportion thereto."

As part of the same transaction, the Moline Malleable Iron Works executed its chattel mortgage, which was duly acknowledged and recorded, conveying to Hemenway, upon like trusts and conditions, certain personal property in Illinois, consisting, in part, of malleable iron, manufactured and in process of manufacture by the grantor.

The Moline Malleable Iron Works made default in the payment of the notes, and in the performance of its obligations as set forth in the trust deed and chattel mortgage.

On the 12th of April, 1884, George H. Hill sold and conveyed his entire interest in the trust deed and chattel mortgage, and in the said indebtedness of $20,000, to the appellant Mellen, in trust for the sole use and benefit of the appellant Sophia H. Boyd.

The present suit was commenced by an original bill exhibited May 5, 1884, by said Mellen and Boyd, citizens of Ohio, against the Moline Malleable Iron Works, Hemenway, Whee-

lock, Stephen T. Walker, Carson, and Jeremiah S. Keator and Ben. C. Keator, late partners as J. S. Keator & Son, all citizens of Illinois. The bill showed that Hill was compelled to pay and did pay off the debt of $20,000, with the interest accruing on the several notes, aggregating that sum.

It stated that in a suit in equity, instituted in the Circuit Court of the United States for the Northern District of Illinois, on the 2d day of July, 1883, by the National Furnace Company, a corporation of Wisconsin in behalf of itself and other general, unsecured creditors of the Moline Malleable Iron Works against the last-named corporation, George H. Hill, and others, the said trust deed and chattel mortgage were assailed as null and void, as against the general creditors of the Moline Malleable Iron Works, upon the following grounds:

" First. Because they constitute a partial assignment for the benefit of creditors by which said corporation seeks to prefer the indorsers therein named in preference to the other creditors of the corporation, which said attempt your orator is advised and believes is fraudulent and unlawful under the statutes of the State of Illinois.

" Second. Because the said assignment does not purport to put the said assignee in possession of said property, and the said assignee has not actually taken possession thereof and has not given bond to the county court of Rock Island County, as provided by law in the case of assignments for the benefit of creditors, and it is not intended to file such bond or distribute the said assigned property under the provisions of the statutes in such cases made and provided.

" Third. That the two assignments constitute a part of the same transaction, and that the chattel mortgage upon the personal property therein described is void as against the creditors of the said corporation, because the said corporation has been and still is allowed by the said assignee to manage, control, and use the property therein described in the usual and ordinary course of business to the same extent and in the same manner as the same were used by the said corporation before the execution of the said chattel mortgage.

"Fourth. Because the said documents operate, and were designed to operate, to hinder and delay the creditors of the said Moline Malleable Iron Works in the collection of their debts.

"Fifth. Because, as against the fair and honest creditors of the said corporation, the preference sought to be given to the said Hill and the said Carson, two of the directors of the said corporation, is null and void.

"Sixth. For divers other reasons your orator has been advised that all of the aforesaid acts and doings of the said Moline Malleable Iron Works, as against your orator and the other *bona fide* creditors of said corporation, are null and void."

The object of that suit, as the bill in the present case averred, was to obtain a decree dissolving the Moline Malleable Iron Works as a corporation, closing up its business, ascertaining the amount, as well of its assets applicable to the payment of debts, as the extent to which its directors and officers were liable to creditors, and adjudging that the said conveyances executed by that corporation were fraudulent and void as to the National Furnace Company and other creditors.

It was further alleged that the debt of the last-named corporation was not, nor was any part of it, due when it brought said suit, and was not secured by any attachment or other process against the property of the debtor corporation; that it had not exhausted its legal remedies for the collection of its debt, and had no lien or claim to the property covered by said trust deed or mortgage; and, consequently, that the court could not and did not acquire jurisdiction to make any valid decree affecting the interest of said Hill.

The relief sought in the present suit, by original bill, was the foreclosure of said trust deed and chattel mortgage, the sale of the property, and the disposition of the proceeds according to the rights of the parties for whose protection those instruments were executed; and this, without reference to the proceedings and final decree in the suit of *National Furnace Company* v. *Moline Malleable Iron Works, etc.*

The defendants Stillman W. Wheelock, A. L. Carson, Charles

F. Hemenway, J. S. Keator and Ben. C. Keator filed a plea in bar of this suit. As the correctness of the decree below depends entirely upon the sufficiency of that plea, it is here given in full:

"That long prior to the time when said George H. Hill sold and conveyed to said complainant Mellen in trust, for the use and benefit of said Sophia H. Boyd, his interest in said trust deed and chattel mortgage, as alleged in said bill of complaint, to wit, on the 2d day of July, 1883, the said National Furnace Company, in its own behalf and on behalf of all the creditors of the Moline Malleable Iron Works, exhibited its original bill of complaint in this honorable court and made parties defendant thereto said Moline Malleable Iron Works, Stillman W. Wheelock, George H. Hill, Amaziah L. Carson, Charles F. Hemenway, Henry H. Hill, Stephen T. Walker, Walter J. Entriken and the J. S. Keator Lumber Company, thereby stating, among other things, that said National Furnace Company was a creditor of said Moline Malleable Iron Works, and that at the time when the said Moline Malleable Iron Works executed the said trust deed and chattel mortgage it was insolvent and its indebtedness was largely in excess of its capital stock, and that its officers and directors had assented to the creation of its indebtedness, and that the said conveyances were fraudulent and void as against creditors of said Moline Malleable Iron Works, and therein and thereby prayed, among other things, that a receiver might be appointed to take charge of and manage the property of the said corporation under the orders of this court, and that the said trust deed and chattel mortgage might be held and adjudged fraudulent and void as against said National Furnace Company and creditors of said Moline Malleable Iron Works; to which said bill these defendants put in their several answers, and said Moline Malleable Iron Works, Henry H. Hill, and Stephen T. Walker interposed their several demurrers; that after exhibiting said bill of complaint, to wit, on the 1st day of August, 1883, upon the application of said National Furnace Company, for the preservation of the property of the said corporation pending the said suit, and for the benefit of all parties inter-

ested therein and in the proceeds thereof, this honorable court entered an order in said cause, as appears of record in this court, appointing one Robert E. Jenkins receiver of the said Moline Malleable Iron Works, and of its property, and directing him to take and hold possession thereof under the orders of this honorable court, and directing the said Moline Malleable Iron Works to transfer and convey to said receiver its entire property, both real and personal, and to deliver up to said receiver the possession thereof; and that thereupon the said Moline Malleable Iron Works did transfer, convey and deliver up to said receiver its property and the possession thereof, and said receiver did enter into and take possession thereof.

"That thereafter and long prior to the time when said George H. Hill sold and conveyed to said complainant Mellen his interest in said trust deed and mortgage, to wit, on the 28th day of November, 1883, the defendant Stillman W. Wheelock, by leave of this honorable court, filed his cross-bill of complaint in the aforesaid cause, made parties defendant to said cross-bill said Moline Malleable Iron Works, the National Furnace Company, George H. Hill, Charles F. Hemenway and said Carson, and therein stated, among other things, that in the year 1880 the said Moline Malleable Iron Works requested that he and the said Carson should become guarantors for it upon its commercial paper, and promised to give them security from any liability to loss by reason thereof by liens on its property, and that at this request and in reliance upon this promise they became guarantors for it from time to time to the amount of about fifty thousand dollars ($50,000); that afterwards, on November 12, 1882, a resolution was adopted by said corporation authorizing its officers to execute proper instruments to secure them from loss, and that thereafter, at the request of said Wheelock, said corporation executed said trust deed and mortgage, and that neither Wheelock nor Carson were in any way interested in or connected with said company when they incurred this liability at its request; that after the said resolution of November 12, 1882, was adopted by said company, said George H. Hill, who

was a stockholder and director, became a guarantor for said company, and that by and through his influence as an officer of said company he was named a beneficiary under said trust deed and mortgage; that the said company was then largely indebted in excess of its capital stock, and that said George H. Hill had assented to the creation of this indebtedness and was liable to its creditors for this excess, and that said trust deed and mortgage were a valid security to said Carson and the J. S. Keator Lumber Company, but that said Hill was not entitled to have and receive the security thereof; that the said property covered by the said trust deed and chattel mortgage was rapidly depreciating in value and should be sold as soon as possible; and praying, among other things, that the said trust deed and chattel mortgage might be declared valid; that the said receiver might be directed to sell immediately the property described in said trust deed and mortgage, together with the other property of said company, and the proceeds of the sale of the property described in said trust deed and mortgage might be applied in satisfaction of and to relieve said Wheelock, Carson and J. S. Keator Lumber Company from the liabilities assumed by them as indorsers for said Moline Malleable Iron Works and the balance disbursed *pro rata* among the creditors of said company; that thereupon, to wit, on the 28th day of November, 1883, it was ordered by this honorable court, as appears of record in this court in said cause, that said National Furnace Company, the Moline Malleable Iron Works, Hemenway, Carson and George H. Hill plead, answer or demur to the said cross-bill on or before the 20th day of December, 1883, and that a copy of said order be served on said Hill on or before December 5, 1883, and that in case said Hill did not appear and plead, answer or demur to said cross-bill as aforesaid the same should be taken as confessed by him; that said order was duly served on said Hill on the 1st day of December, 1883, to wit, long prior to the making of the said assignment to said Mellen; that the said defendants, the National Furnace Company, Hemenway and Carson, answered said cross-bill, as directed by said order, but that said Hill and said Moline Malleable Iron Works failed to

appear in said cause and to plead, answer or demur to said cross-bill therein, as directed by said order; that thereafter, to wit, on the 22d day of December, 1883, the said receiver filed his petition in said cause, alleging, among other things, that the property of said Moline Malleable Iron Works in his possession as such receiver (and including therein the said property covered by said trust deed and chattel mortgage) was rapidly depreciating in value, and that for the interests of all persons who might be interested therein, and to realize anything for the creditors therefrom, it should be sold at once, and praying that he might be authorized to offer the said property for sale, and that thereupon it was ordered, on said petition being filed, by this honorable court, as appears of record in said cause in this court, that the said receiver should offer and advertise for sale, in the manner directed by said order, all of said property and should report bids therefor to this court.

"That thereafter, to wit, on the 20th of February, 1884, said receiver filed in said cause his report, stating therein, in substance, that he had advertised and offered said property for sale in the manner and as directed by said order, and that the highest bid received by him therefor was that of Stillman W. Wheelock, in the amount of thirty thousand dollars ($30,000); that it was thereupon ordered by this honorable court, as appears of record in this court, that all persons should show cause, by the 28th day of February, 1884, why said bid of said Wheelock should not be accepted; and that thereafter, to wit, on the 3d day of March, 1884, it was ordered by this honorable court in said cause, as appears of record in this court, that the said bid of said Wheelock for said property be accepted, and that said receiver sell and convey the same to him, and that thereupon said receiver did sell and convey the said property to said Wheelock in accordance with said order.

"That thereafter, to wit, on the 3d day of March, 1884, it appearing to this honorable court that said George H. Hill resided beyond the jurisdiction of this court, it was ordered by this honorable court, as appears of record in this court, that said George H. Hill do appear and plead, answer, or demur to

the said original and supplemental bill of complaint in said cause on or before the 15th day of April, 1884, and that a copy of said order should be served upon said Hill on or before the 15th day of March, 1884, and that in case he did not appear, plead, answer, or demur to said bill as directed the same should be taken as confessed by him; and that thereafter, to wit, long prior to the time when said Hill sold and conveyed to said Mellen his interest in said trust deed and mortgage, a certified copy of said order was served on said Hill; and thereafter, to wit, on the 22d day of April, 1884, said Hill not appearing and pleading, answering, or demurring to said original and supplemental bill, as directed by said order, it was ordered by this honorable court in said cause, as now appears of record therein in this court, that said original and supplemental bill be taken as confessed by said Hill.

" That thereafter, to wit, on the 23d day of April, 1884, long prior to the filing of the said bill of complaint by said William S. Mellen, said Hill not having appeared and pleaded, answered or demurred to said cross-bill, by the order of this court entered in said cause, and now appearing of record in this court, it was ordered that the said cross-bill of said Wheelock be taken as confessed by said George H. Hill; and afterwards, to wit, on the 26th day of June, 1884, the said cause came on to be heard upon the said original and supplemental bills of complaint and answers and replications thereto, and upon the said cross-bill of said Wheelock and the answers and replications thereto, and upon the testimony taken in said cause, and a final decree was then rendered therein, which now appears of record in this court, and it was therein found by this honorable court, among other things, that the indebtedness of said Moline Malleable Iron Works was in excess of its capital stock in the sum of $75,000; that the said trust deed and chattel mortgage were valid in so far as they gave to said Wheelock, Carson and the J. S. Keator Lumber Company a first lien on the property therein described; and that said George H. Hill was not entitled to any lien or security by reason of said trust deed and mortgage; and that the same were invalid as to him, because the liabilities of said company

in excess of its capital stock were incurred while he was one of the directors and its vice-president, and with his knowledge and assent thereto, and because he was named in said trust deed and chattel mortgage as a beneficiary thereunder through his influence and control over said corporation as an officer thereof; and it was thereby decreed, among other things, that said Wheelock, Carson and the J. S. Keator Lumber Company were entitled to have and receive the proceeds derived from the sale of the property conveyed by said trust deed and mortgage in part satisfaction of the sums paid by them for said company.

" All of which matters and things these defendants do aver and plead in bar to said bill of complaint, and do pray judgment of this honorable court whether they should make any further answer to said bill of complaint, and to be hence dismissed with their costs and charges in this behalf most wrongfully sustained."

This plea was sustained, the present bill was taken for confessed by the Moline Malleable Iron Works and Walker, for want of plea, demurrer or answer, and the suit was dismissed for want of equity.

*Mr. Thomas, McDougall* for appellants.

I. The Circuit Court never acquired jurisdiction of Hill, or of his interest in the property, in the National Furnace Company's suit. He was a citizen of Ohio; he never voluntarily appeared; he could not be brought in under the provisions of Rev. Stat. § 739, unless the case was within the provisions of Rev. Stat. 2d ed. § 738 (the act of March 3, 1875, 18 Stat. 470). Neither he nor his interest in the property was before the court in that case for adjudication.

The bill in this case which, for the purposes of the plea, is taken as admitted to be true, shows that the National Furnace Company had neither a legal nor an equitable lien upon, or claim to the property covered by the trust deeds. It shows that the Furnace Company was only a general unsecured creditor of the Moline Malleable Iron Works, and that its debt

as such creditor was not due at the time it filed its bill of complaint in the Circuit Court. Its claim against the Iron Works had not been reduced to judgment, nor had it exhausted the property of the Iron Works, its debtor, by execution or other legal process, nor had any attachment or other process been issued by the Circuit Court or any other court, whereby any lien on or claim to the property covered by the trust deeds had been acquired. The case presented by that bill was not one covered by § 738, and, as attempting to enforce any lien on or claim to the property covered by the trust deeds, it could not have been sustained. *Jones* v. *Green*, 1 Wall. 330; *Van Weel* v. *Winston*, 115 U. S. 228, 245; *Freedman's Saving & Trust Co.* v. *Earle*, 110 U. S. 710; *Shainwald* v. *Lewis*, 6 Fed. Rep. 510; *Pacific Railroad Co.* v. *Missouri Pacific Railway Co.*, 3 Fed. Rep. 772; *Lovejoy* v. *Hartford Fire Ins Co.*, 11 Fed. Rep. 63; *Hyde Park Gas Co.* v. *Kerber*, 5 Bradwell (Ill. App.) 132; *Wincock* v. *Turpin*, 96 Illinois, 135.

Supposing, however, for the purposes of the argument, that it was such a bill, this suit is not one contemplated by § 738 of the Revised Statutes of the United States. An unsecured creditor bringing such a suit, whose claim is not in judgment, has no claim to and can have no lien on any part of the real or personal property of the corporation, such as is contemplated by § 738. In the event that the corporation is not dissolved, (and a creditor is not entitled to a decree to wind it up,) his bill necessarily must be dismissed. No receiver could be appointed who would have the right to sell the property until such action was taken by the court, and it does not appear by the record in this case that the Moline Malleable Iron Works ever was dissolved, or that the court found that the National Furnace Company was entitled to have the corporation dissolved and the relief granted as provided by § 25, c. 32, of the Revised Statutes of Illinois.

II. The Circuit Court had no authority to make the order of sale that it made in the case brought by the National Furnace Company. The bill in that case showed and advised the court at the time it was making these orders, and confirming said sale, that Hill was a citizen of the State of Ohio, and a

resident thereof. Any order made by the court affecting his interest before jurisdiction had been acquired of him or of his interest in the property, must be void. *Webster* v. *Reed*, 11 How. 437, 457; *Windsor* v. *McVeigh*, 93 U. S. 274; *United States* v. *Walker*, 109 U. S. 258; *Bigelow* v. *Forrest*, 9 Wall. 339; *Ex parte Lange*, 18 Wall. 163.

III. The cross-bill in that case did not enlarge the jurisdiction of the court over Hill's interest in the property, or over him personally. *Cross* v. *De Valle*, 1 Wall. 1; *Putnam* v. *New Albany*, 4 Bissell, 365; *Weaver* v. *Altee*, 3 Woods, 152; *Shields* v. *Barrow*, 17 How. 130; *Ayers* v. *Carver*, 17 How. 591.

IV. The complainants are entitled to the relief they pray for in their bill in this case.

If we are mistaken in our contention therefor, and if the court did acquire jurisdiction over Hill and his interest in the property, nevertheless appellant was entitled to be made a party to that proceeding, and to have his rights protected; because at that time no decree had been taken on the merits of the bill, and he was interested in the proceeds of the sale and the questions touching the validity of the trust deeds.

If, on the other hand, the court did not acquire jurisdiction of Hill's interest in said property by the original and supplemental bills, and the jurisdiction of the court was not enlarged by the cross-bill, the complainants are entitled to the relief sought in the bill herein, if we are correct in our assumption as to the lack of jurisdiction by the court, in the case brought by the National Furnace Company, over the interest of said Hill in the property covered by the trust deeds. *The Minnesota Co.* v. *The St. Paul Co.*, 2 Wall. 609; *Pacific Railroad of Missouri* v. *Missouri Pacific Railway*, 111 U. S. 505.

*Mr. Samuel A. Lynde* (with whom was *Mr. Charles M. Osborn* on the brief) for appellees.

Mr. JUSTICE HARLAN, after stating the case as above reported, delivered the opinion of the court.

Was the decree in the suit instituted by the National Furnace Company (to be hereafter called the Furnace Company)

against the Moline Malleable Iron Works (to be hereafter called the Iron Works) and others, declaring that Hill was not entitled to a lien or security by reason of the trust deed and chattel mortgage of June 23, 1883, void for want of jurisdiction in the court that rendered it? This is the principal question in the present case. Its solution depends upon the construction of the eighth section of the act of March 3, 1875, determining the jurisdiction of the Circuit Court of the United States. 18 Stat. 472, c. 137, § 8.

That section authorizes an order to be made directing an absent defendant in any suit brought in a Circuit Court of the United States to enforce any legal or equitable lien upon, or claim to, or to remove any incumbrance or lien or cloud upon the title, to real or personal property *within the district where such suit is brought* — such defendant not being an inhabitant of or found therein, and not voluntarily appearing in the suit — to appear, plead, answer or demur, by a designated day. The order must be served upon the absent defendant, if practicable, wherever found, and upon the person, if any, in charge or possession of the property. If such personal service be not practicable, the order must be published in such manner as the court may direct, not less than once a week for six consecutive weeks. If the defendant does not appear, plead, answer or demur, within the time limited, or within such further time as may be allowed, the court — proof being made of service or publication of the order, and of the performance of the directions therein contained — may "entertain jurisdiction and proceed to the hearing and adjudication of such suit in the same manner as if such absent defendant had been served with process within the said district." "But," the act declares, "said adjudication shall, as regards said absent defendant or defendants without appearance, *affect only the property which shall have been the subject of the suit and under the jurisdiction of the court therein, within such district.*" A defendant, not personally notified as provided in the act, may within one year after final judgment enter his appearance in the suit; whereupon, the court must make an order setting aside the judgment and permitting him to plead, on payment of such costs as shall

be deemed just; the suit then to proceed to final judgment, according to law. The previous statute gave the above remedy only in suits "to enforce any legal or equitable lien or claim against real or personal property within the district where the suit is brought," while the act of 1875 gives it also in suits brought "to remove any incumbrance or lien or cloud upon the title to" such property. Rev. Stat. § 738; 18 Stat. 472, c. 137, § 8.

We are of opinion that the suit instituted by the Furnace Company against the Iron Works and others belonged to the class of suits last described. The trust deed and chattel mortgage in question embraced specific property within the district in which the suit was brought. The Furnace Company, in behalf of itself and other creditors of the Iron Works, claimed an interest in such property as constituting a trust fund for the payment of the debts of the latter, and the right to have it subjected to the payment of their demands. In *Graham* v. *Railroad Company*, 102 U. S. 148, 161, this court said that "when a corporation becomes insolvent, it is so far civilly dead, that its property may be administered as a trust fund for the benefit of its stockholders and creditors. A court of equity, at the instance of the proper parties, will then make those funds trust funds, which, in other circumstances, are as much the absolute property of the corporation as any man's property is his." See also *Mumma* v. *Potomac Company*, 8 Pet. 281, 286; *County of Morgan* v. *Allen*, 103 U. S. 498, 509; *Wabash &c. Railway* v. *Ham*, 114 U. S. 587, 594; 2 Story's Eq. Jur. § 1252; 1 Perry on Trusts, § 242. The trust deed and chattel mortgage executed by the Iron Works created a lien upon the property, in favor of Wheeler, Carson, Hill, and the Keator Lumber Company, superior to all other creditors. The Furnace Company, in behalf of itself and other unsecured creditors, as well as Wheelock, denied the validity of Hill's lien as against them. That lien was therefore an incumbrance or cloud upon the title, to their prejudice. Until such lien or incumbrance was removed, they could not know the extent of their interest in the property or in the proceeds of its sale. The case made by the original, as well as cross-suit, seems to be within both the letter and the spirit of the act of 1875.

It is, however, contended, that the Furnace Company could not rightfully invoke the aid of a court of equity to remove this lien or incumbrance, until it had, by obtaining judgment for its debt and suing out execution, exhausted its legal remedies. *Jones* v. *Green*, 1 Wall. 330; *Van Weel* v. *Winston*, 115 U. S. 228, 245. But that was one of the questions necessary to be determined in the suit brought by that company, and any error in deciding it would not authorize even the same court, in an original, independent suit, to treat the decree as void. Besides, the removal of alleged liens or incumbrances upon property, the closing up of affairs of insolvent corporations, and the administration and distribution of trust funds, are subjects over which courts of equity have general jurisdiction.

It is, also, suggested that the court proceeded in the suit instituted by the Furnace Company upon the theory that it was maintainable under the provisions of the Illinois statute giving courts of equity "full power, on good cause shown, to dissolve or close up the business of any corporation, to appoint a receiver therefor who shall have authority, by the name of the receiver of such corporation, to sue in all courts and do all things necessary to closing up its affairs, as commanded by the decree of such court." 1 Starr & Curtis Rev. Stat. Ill. 618, Title "Corporations," c. 32, § 25. The appellants earnestly insist that no case was made that would bring that suit within these provisions of the Illinois statute, or that would give the Furnace Company any right to have the Iron Works dissolved as a corporation, and its business closed up. And on behalf of the appellees it is contended that the suit brought by the Furnace Company was not an ordinary creditor's suit, but one for the administration and distribution of a trust fund. In the view we take of the case it is not necessary to determine the soundness of any of these propositions; for, if the court erroneously ruled upon any of them, its decree could not for that reason be assailed in a collateral proceeding as void for want of jurisdiction. An adjudication that a particular case is of equitable cognizance, cannot be disturbed by an original suit. Such adjudication is not void, even if erroneous.

This brings us to the question whether the steps taken in

the suit brought by the National Furnace Company were such as authorized a decree that would affect Hill's interest in the property covered by the trust deed and chattel mortgage. We lay out of view the fact that Hill was a citizen of Ohio, and neither appeared, nor was served with process within the district in which the suit was brought. He was personally served with copies of the orders requiring him to plead, answer, or demur, and the decree only affects his interest in property within the territorial limits of that district.

It appears from the plea upon which the cause was heard, that on the 1st of August, 1883, after the present appellees had answered the original bill in most part, and after the Iron Works had demurred, the court, upon the application of the Furnace Company, appointed a receiver to take possession of the property of the first named company, including that covered by the trust deed and chattel mortgage, for the benefit of all parties interested in it; and that, on the 28th of November, 1883, Wheelock, by leave, filed his cross-bill against the Iron Works, the Furnace Company, Geo. H. Hill, Hemenway, and Carson, asking a decree declaring said trust deed and mortgage valid as to himself, Carson and the Keator Lumber Company, and void as to Hill. He alleged that the property embraced in the trust deed and chattel mortgage was rapidly depreciating in value, and ought to be sold, and the proceeds applied, primarily, to relieve himself, Carson and the Keator Lumber Company from the liabilities assumed by them as indorsers for the Iron Works. On the same day an order was entered requiring the defendants to the cross-bill to plead, answer, or demur to the same on or before December 20, 1883, and providing that if Hill (being served with a copy of the order on or before December 5, 1883) did not appear, plead, answer, or demur to the cross-bill, by the time fixed, the same would be taken as confessed by him. Hill was served — presumably in Ohio, where he resided — on the 1st of December, 1883, with such copy; but neither he nor the Iron Works appeared, pleaded, answered, or demurred to the cross-bill. It appearing from the petition of the receiver, filed December 22, 1883, that the property covered by the trust deed and mort-

gage was rapidly depreciating in value, he was authorized by an order of court to advertise and sell it. He did sell it, and, February 20, 1884, reported a sale, by him, to Wheelock, pursuant to and in the manner directed by the court. That sale was approved, time being given to show cause why it should not be confirmed. The property was conveyed by the receiver to Wheelock. On the 3d of March, 1884, Hill was required by order of court to appear on or before April 15, 1884, and plead, answer, or demur to the original and supplemental bill, and it was ordered that if he did not, on or before the latter day, being previously served with a copy of such order, appear and plead, answer or demur, the bill would be taken as confessed by him. Long prior to the sale to Mellen of Hill's interest in the trust and mortgage the latter was served with a copy of the order of March 3, 1884, and on the 22d of April, 1884, the original and supplemental bills, Hill not having appeared, and answered, pleaded or demurred, were taken as confessed by him. On the succeeding day a like order was entered against him as to the cross-bill, he not having appeared, pleaded, answered or demurred thereto. The cause came on to be heard on the 26th of June, 1884, upon the original and supplemental bill, upon the cross-bill, upon the answer and replications thereto, and upon the testimony taken in the cause, when the final decree was rendered as set forth in the plea embraced in the statement of facts preceding this opinion.

A large part of the argument on behalf of the appellants is in support of the proposition, that, as the order requiring Hill to appear and plead, answer or demur, to the original and supplemental bills was not made until after the receiver had, by order of the court, sold the property, the sale was a nullity. We do not assent to this view. Whether the condition of the property was such as to require, for the protection of the parties, that it be sold, was a matter for the court, in its discretion, to determine. There is nothing to show that the order of sale was even improvidently made, much less that it was procured by fraud, or that the property was sacrificed. If the circumstances justified immediate action, the court had power to order a sale in advance of a final decree. The sale

was not ordered or made until after Hill had been duly served with a copy of the order of November 28, 1883, to appear and plead, answer or demur, to the cross-bill by the day fixed in that order. If the sale was irregular, by reason of its being ordered and made before Hill was directed to appear and plead, answer or demur, to the original and supplemental bills, that is not a matter affecting the jurisdiction of the court to render a final decree in respect to his interest in the property; for the proceeds took the place of the property, and whatever rights Hill had in the latter were transferred to the former.

So that the real question, upon this part of the case, is whether the proceedings in question conformed to the act of March 3, 1875. We are of opinion that they did. Before the final decree was rendered, Hill had been served with a copy of the several orders requiring him to appear and plead, answer and demur, as well to the original and supplemental bills as to the cross-bill, and was in default in respect to each order. It may not have been in accordance with the usual or proper practice to take the cross-bill for confessed before he had been duly served with the order to appear and plead, answer or demur, to the original and supplemental bills. But if that was an irregularity it was one that did not affect the power of the court to make a final decree and constitutes no ground for disregarding that decree in this collateral proceeding.

We have considered the case just as if the present suit had been brought by Hill. The appellants have no greater rights than he would have, if the present suit had been instituted by him; for Mellen, the trustee for Sophia H. Boyd, acquired his rights *pendente lite.* Hill sold and conveyed to him, after he had been personally served with copies of the order to appear and plead, answer or demur, to the original and supplemental bills, and only three days before the time fixed for his appearance to the original suit. His sale was more than three months after he was required to appear, and plead, answer, or demur to the cross-bill. That sale and conveyance could not affect the power of the court to proceed to a final decree, so far as his interest in the property was concerned. Nor by such sale and conveyance did Mellen and his *cestui que trust*

acquire any absolute right to become a party to the suit instituted by the Furnace Company. Purchasers of property involved in a pending suit may be admitted as parties, in the discretion of the court; but they cannot demand, as of absolute right, to be made parties, nor can they complain if they are compelled to abide by whatever decree the court may render, within the limits of its power, in respect to the interest their vendor had in the property purchased by them *pendente lite. Eyster* v. *Gaff*, 91 U. S. 521, 524; *Union Trust Co.* v. *Inland Navigation and Improvement Co.*, 130 U. S. 565; 1 Story's Eq. Jur. § 406; *Murray* v. *Ballou*, 1 Johns. Ch. 566. As said by Sir William Grant, in *Bishop of Winchester* v. *Paine*, 11 Ves. 194, 197, "the litigating parties are exempted from the necessity of taking any notice of a title so acquired. As to them, it is as if no such title existed. Otherwise, such suits would be indeterminable; or, which would be the same in effect, it would be in the pleasure of one party at what period the suit should be determined." The present proceeding is an attempt, upon the part of a purchaser *pedente lite*, to relitigate, in an original, independent suit, the matters determined in the suit to which his vendor was a party. That cannot be permitted, consistently with the settled rules of equity practice.

There is no error in the decree, and it is

*Affirmed.*