## PEOPLE'S–PITTSBURGH TRUST CO. v. HIRSCH et al.

### Nos. 5083, 5084.

Circuit Court of Appeals, Third Circuit.

June 28, 1933.

Charles F. C. Arensberg, James S. Crawford, and Patterson, Crawford, Arensberg & Dunn, all of Pittsburgh, Pa., for appellant.

E. Lowry Humes and G. D. Prather, both of Pittsburgh, Pa., for appellees.

Doty & Thornton, William S. Doty, and Thomas A. Thornton, all of Pittsburgh, Pa., amici curiæ.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

DAVIS, Circuit Judge.

These are appeals from two decrees of the District Court. In the first decree, the court ordered the receiver to sell a tract of land of 112 acres free, clear, and discharged of liens and, in the second, it refused to permit the appellant, the People's-Pittsburgh Trust Company, trustee, to foreclose its mortgage on the same tract.

The question in issue is whether or not the court erred in entering these decrees.

A court of equity, under proper circumstances, has power to order a receiver to sell property free and clear of all incumbrances and to deny the mortgagee the right to foreclose his mortgage. Stokes v. Williams (C. C. A.) 226 F. 148; In re Dyer (D. C.) 8 F. (2d) 376; Broadway Trust Company v. Dill (C. C. A.) 17 F.(2d) 486; Seaboard National Bank v. Rogers Milk Products Company (C. C. A.) 21 F.(2d) 414; Mellen v. Moline Malleable Iron Works, 131 U. S. 352, 9 S. Ct. 781, 33 L. Ed. 178; Van Huffel v. Harkelrode, etc., 284 U. S. 225, 52 S. Ct. 115, 76 L. Ed. 256.

The question for the court to determine in any particular case is whether or not the circumstances are such in that case as justify it in denying the mortgagee the right to foreclose his mortgage and in ordering the receiver to sell the property free and clear of the lien thereon. The question before the appellate court in such case is whether or not the court in the first instance abused its discretion. The determination of this question in the case at bar involves the necessity of examining the circumstances which prompted the action of the District Court.

The Conneaut Lake Company, hereinafter called the company, had for a long time owned a resort known as Conneaut Lake Park, situated on the west shore of Conneaut Lake in Crawford county, Pa. The park consists of about 112 acres "on which is situate a small city." The company has leased property to a large number of people who have erected homes thereon. Many of these people reside there during the entire year. The company has constructed on the property a hotel of 340 rooms, a dance hall made of steel and concrete, a bowling alley, a boat house, a theater, a convention hall with a seating capacity of 5,000, an auditorium, many structures rented to concessionaires for the conduct of commercial business, a large garage and many small garages, a gasoline station, a concrete fire engine house, an office building, carpenter shops, plumbing shops, electrical shops, thirty to forty cottages, several amusement places, a complete water system which provides water for all domestic and fire purposes, an electric light distributing system which supplies current for domestic, industrial, and street lighting purposes, a sewage system and a sewage disposal plant to serve the sanitary needs of the inhabitants of the park.

The company, in addition, owned about 600 acres of farm land and some undeveloped and unimproved land. On some of this land it constructed a golf course. Since then two farms have been sold under foreclosure, and the receiver has been ordered to sell the balance of the undeveloped and unimproved land.

On February 13, 1924, the company borrowed $100,000 from the appellant for the purpose of building a wing to the hotel, and executed a mortgage covering the 112-acre tract. The unpaid balance on this mortgage is $97,440. The appellant is seeking to foreclose this mortgage.

On September 27, 1929, the plaintiff, Ralph H. Hirsch, a citizen of the state of Ohio, filed his complaint in which he alleged

that the company was unable to pay the pressing claims of its creditors; that several suits had been threatened or actually instituted; that its property was liable to become subject to judgment, execution, attachment, and garnishment proceedings and its property to be disposed of and sacrificed with great loss to its creditors and stockholders, and prayed for the appointment of a receiver to take charge of the property of the company and conduct its business, etc. R. J. MacDonald was appointed receiver.

At this time there were three classes of creditors: (1) Mortgagees, holding underlying mortgages aggregating $127,500; (2) the trustee and bondholders under a trust mortgage given in 1927 in the sum of $475,000 ($324,500 of these bonds were issued and outstanding, and the balance of $127,500 were deposited in escrow with the appellant under certain arrangements); (3) general creditors. The appellant was a member of each class, being mortgagee, trustee, and general creditor. It consented to the appointment of the receiver, and during the following three years consulted and co-operated with him in the operation of the company's properties.

On October 11, 1932, the receiver petitioned the District Court for leave to sell the property of the company because the appellant and the Crawford County Trust Company had notified him of their intention to ask leave to foreclose their mortgages and because he was without funds to continue the operation of the plant in the face of the threatened foreclosures. On the same day the appellant and the Crawford County Trust Company presented their petitions to the court and prayed for leave to foreclose the mortgages in question. On December 14, 1932, the court, as above stated, filed its opinion and entered decrees allowing the receiver to sell the tract of 112 acres covered by the appellant's mortgage, together with certain other real estate, free, clear, and discharged of all liens, but at the same time denied the petition of the appellant for leave to foreclose, but allowed the Crawford County Trust Company to foreclose its mortgages against two farms and certain undeveloped land upon filing with the court a bond, with the receiver as obligee, conditioned for the payment of all accrued taxes and such portion of the corporation taxes due the commonwealth of Pennsylvania as should be charged against the real estate described in its mortgages in subsequent orders and decrees.

It is from these decrees that the appeals were taken.

■ If the appellant had foreclosed its mortgage and purchased the real estate, as it might have, and probably would have, done, and the personal property had been sold at another time, it is evident that the personal property would have been sacrificed, for it would normally be worth very much less to any one other than the purchaser of the hotel property, and he would be in the position of a favored buyer. Both the real and personal property should be sold at one and the same time, as the receiver would do. In justifying its decrees the court said:

"As to the property covered by the mortgage of the Peoples-Pittsburgh Trust Company, a somewhat different situation exists. This property consists of a large hotel, an amusement park with its buildings incident thereto and a number of cottages. This property, several years ago, was, and may in the more or less distant future, be, of considerably greater value than the amount of the mortgage indebtedness upon it, but at the present time, it is at least doubtful whether, upon judicial sale, it will bring a sum greater than the amount of the debt and interest due the Peoples-Pittsburgh Trust Company. It is certain that it cannot be sold for an amount equal to the indebtedness upon the mortgage given to secure the bond issue.

"In the ordinary case this state of facts would preclude an order of sale free of liens. In this case, however, the Receiver asserts that the receivership received the assent of the mortgagee and that he was in close touch with the latter during the entire period of his operations and did nothing of any importance without the knowledge and approval of its officers. He avers further that certain of the sums expended by him were in the sole interest of the preservation of the property covered by the mortgages, and that, under the circumstances, it should be called upon to pay a certain proportion of the expenses of the receivership. Whether this contention be justified or not, we do not at this time decide. A further and tangible reason exists, we think, for ordering a sale by the Receiver. The hotel contains a large amount of furniture, furnishings, etc. of very considerable value, which are admittedly not covered by any mortgage and which must be sold by the Receiver. It would seem in the interests of the receivership that the hotel furnishings should be put up at the same sale as the hotel property. As we view the matter, a sale by the receiver would have cer-

tain decided advantages over a sale upon the foreclosure proceedings and would be at no greater expense. Under the terms of our decree of sale we feel that the interests of the mortgagee will be fully protected."

The court, in our opinion, not only did not abuse its discretion, but exercised wise judgment.

■ After the argument of this case, permission was given to counsel for Kenneth Ketchum and A. R. Kiefer, who became judgment creditors of the company on April 15, 1933, to file a brief as amici curiæ. They contend that the bill filed in the District Court should be dismissed because the plaintiff did not allege therein that the amount in controversy between him and the defendant exceeded $3,000, exclusive of interest and costs. What the bill alleged was "that the amount involved in this cause exceeds, exclusive of interest and costs, the sum of $3,000.00."

This allegation, it is urged, refers to the assets of the company to be absorbed by the receivership. But this seems untenable, for almost immediately thereafter it is alleged "that the real estate of the said defendant company is valued under appraisements heretofore made and believed to be substantially correct, at more than $1,000,000.00." It would seem that the jurisdictional averment referred to the amount in controversy between the plaintiff and defendant. No further attention appears to have been paid to the amount of the claim of the plaintiff, but the fact seems to be that his claim is an unsecured demand note "dated June 9, 1929, for $9,462.16."

It is further urged that the plaintiff was a simple contract creditor whose claim had not been reduced to judgment, and as such, in the absence of a statute, he had no substantive right, legal or equitable, in or to the property of his debtor, whether individual or corporate.

■■ It is true that he had no rights whatever in equity until he had exhausted his legal remedy, and thereafter, if the judgment remained unsatisfied, he could have proceeded in equity by a creditor's bill. Pusey & Jones Company v. Hanssen, 261 U. S. 491, 497, 43 S. Ct. 454, 67 L. Ed. 763. But this

defect is not fatal at this time. The record before us conclusively shows that the defendant is hopelessly insolvent and the administration of the assets of an insolvent corporation is within the functions of equity, and, the parties being before the court, it has power to proceed with such administration. When the subject-matter is one over which a court of equity has jurisdiction, a defense which would have prevailed if made in limini does not now, after the court has proceeded with the administration for nearly four years oust it of jurisdiction. Brown, Bonnell & Co. v. Lake Superior Iron Company, 134 U. S. 530, 10 S. Ct. 604, 33 L. Ed. 1021; Hollins v. Brierfield Coal & Iron Company, 150 U. S. 371, 380, 381, 14 S. Ct. 127, 37 L. Ed. 1113; Southern Pacific Railroad Company v. United States, 200 U. S. 341, 349, 26 S. Ct. 296, 50 L. Ed. 507.

■ Again, whatever defects there might have been in the beginning to the jurisdiction under the facts alleged in this case were waived by the defendant when it appeared and admitted the truth of the allegations of the bill and consented to the appointment of a receiver. In re Metropolitan Railway Receivership, 208 U. S. 90, 109, 110, 28 S. Ct. 219, 52 L. Ed. 403.

The brief filed by Messrs. Ketchum and Kiefer was filed by permission of the court for its information, but upon suitable application the District Court would doubtless have welcomed any information they could have given and the brief might have been filed in the beginning.

The subject-matter of this case is one over which a court of equity has jurisdiction, and it could not possibly help any one now to dismiss the appeal on a technical matter which might have been brought to the attention of the court nearly four years ago. On the contrary, it would be harmful to those creditors who under the law will share in the assets of the insolvent estate.

Under the view which we have taken of this case, it is unnecessary to discuss the question of amendment which has been raised.

The decrees of the District Court are affirmed.