REINHART et al. v. AUGUSTA MIN. & INV. CO.   MANHATTAN TRUST CO. v. SAME.   VAN VOLKENBURGH et al. v. PROUT et al.

(Circuit Court of Appeals, Fifth Circuit.   May 31, 1899.)

No. 734.

1. CORPORATIONS—RECEIVERS—FUND CHARGEABLE WITH EXPENSES.

A receiver was appointed for a mining corporation, upon a bill alleging insolvency of the corporation, and inability to earn its charges and operating expenses. By consent, he was to operate the mines, and was authorized to borrow money, and was directed to pay all debts for labor and supplies incurred by the corporation within the six months preceding his appointment; payment to be made from earnings and income, or from money borrowed. *Held*, that the expenses of the receivership and the debts for labor and supplies were not payable alone out of the income and revenues of the corporation, but they might be paid out of the corpus of the estate.

2. SAME—MORTGAGES—PRIORITY.

The receivership was afterwards extended to a suit to foreclose a mortgage of the mining property, on motion of the trustee of the mortgage; and a decree was passed, without objection, ordering a sale, and giving the debts for labor and supplies, and the expenses of the receivership, priority over the mortgage. A decree of distribution was passed in accordance with the decree of foreclosure, and no appeal was taken therefrom, except by certain of the mortgage bondholders, who had caused the receiver to be appointed. *Held*, that the mortgage bonds were not entitled to priority over said expenses and debts, since the parties had agreed otherwise.

Appeal from the Circuit Court of the United States for the Northern District of Georgia.

On October 12, 1892, Joseph W. Reinhart, Phillip Van Volkenburgh, and others, citizens of the state of New York, filed their bill in equity in the circuit court of the United States for the Northern district of Georgia. The bill was brought for the complainants named in the bill, and such others as might thereafter be joined as complainants. The bill averred that the Augusta Mining & Investment Company, incorporated under the laws of the state of Virginia, owes the complainants certain promissory notes, due on demand, for money loaned said corporation to enable it to carry on its business in Polk county, Ga.; that payment of the notes had been refused, the corporation alleging as a reason for the refusal lack of money to pay the notes, or any part of them; that, in

addition to said notes, said corporation was largely indebted to other parties, its principal indebtedness being the sum of $400,000 of first mortgage bonds, the majority of which is held and controlled by the complainants; that, while said bonds were not yet due, complainants believed and charged that there was great danger, owing to the character and condition of the assets of the corporation, and its inability to properly operate and carry on its business, on account of financial embarrassments, that it would not be able to pay the bonds when they became due; that but recently before the filing of the bill the corporation, being in need of funds to pay its current expenses, and to meet its obligations, which amounted to $75,000, issued debenture bonds for $75,000, the principal creditors of the corporation agreeing to take said bonds in payment of their claims, and the complainants hold, as such creditors, a majority of said debenture bonds, to wit, $40,000; that the interest due on said debenture bonds was not paid by the corporation, because of its inability to pay the same; that the corporation was largely indebted over and above the items of indebtedness above set out; that the corporation was the owner of large quantities of ore lands situated in the states of Virginia, Alabama, and Georgia; that said ore lands were very valuable, if the same could be fully equipped and operated, but that the defendant corporation was operating only three of its ore plants, and had equipped another, and was preparing to operate the same; that, while it was true that the above property was valuable, yet that its value was less than the indebtedness of the company, and, if permitted to be brought to a forced sale or placed upon the market, it would be greatly sacrificed, and would not realize enough to pay any of its indebtedness; that not only was this true, but that the defendant had not been able to earn its fixed charges and operating expenses, but said charges and expenses had been allowed to accumulate until the corporation had become insolvent, and, unless its property and assets were taken in charge by a court of equity, the complainants and other creditors would not receive payment of their debts; and that, even under the best management, it was very doubtful if the corporation could meet its liabilities, and especially would this be true if the defendant were not protected from vexatious litigation and attachments, and other proceedings which were then threatened against it, the effect of which would be to entirely destroy all prospects for the payment of the complainants' claim then due, and the utter ruin of the only security which the complainants hold, being first mortgage bonds and debenture bonds. The complainants, in their own behalf, and in behalf of such other creditors as might become parties to the bill, prayed that the corporation might be brought to sale, or that if it should be deemed advisable, on account of the peculiar nature and character of the property, and on account of the fact that some of the debts were due and some not due, that no sale of the property should be had, but that the property should be kept together and operated by a receiver, and the profits of such business should be applied to the payment of the complainants' debts and such other debts as might be due, and the corpus maintained intact for the payment of the debts not due, then the complainants prayed that the court might decree accordingly. They prayed further for the appointment of a receiver to take possession of the property, with the usual powers of receivers in such cases, with the power to manage and operate all of the ore banks then equipped and in operation, and with power to equip and operate more if it should be deemed advisable, and receive all the earnings and income thereof during the pendency of the suit, and with such other powers as should seem to the court right and proper.

On the same day on which the above bill of complaint was filed, to wit, on October 12, 1892, Charles W. Haskins was appointed temporary receiver. the defendant corporation consenting to the appointment. The receiver was directed by the order appointing him to take possession of all the property of the corporation, with power as prayed for in the bill of complaint, and to manage, operate, and maintain the several ore banks, with authority to employ officers, employés, and workmen, to keep the property equipped and in operation, and to collect all rents and revenues derived from the property over and above all expenses and liabilities authorized by the order of appointment. The receiver was specially authorized to pay all necessary and current expenses in the operation of the ore banks. It was also ordered that the debts for labor and for supplies and materials done or furnished since July 1, 1892, be paid by the receiver. The above

order of October 12, 1892, was made on the motion of complainants. On October 19, 1892, the receiver reported to the court that by the order appointing him he was authorized to pay for materials and supplies furnished to the company, and wages for labor, since July 1, 1892, but that on account of extraordinary work done by the company, in building a railroad from the company's property to the East & West Railway, he had not sufficient funds in hand to pay all these expenses covered by the court's order; and the receiver therefore asked that he be authorized and empowered to borrow not more than $12,000, or such part thereof as might be necessary, upon his note or notes, drawing not more than 8 per cent. interest, and the notes extending for a period not exceeding 12 months,—the receiver to report his action in the premises to the court. Upon this application, the court, on October 19, 1892, with the consent of the complainants, made an order authorizing the receiver to borrow not exceeding $12,-000, under the terms and for the purposes set forth in the application. On October 31, 1892, on the motion of the complainants for the appointment of a permanent receiver, the defendant corporation consenting, the court appointed Charles W. Haskins as permanent receiver. Amongst other things, the order provided that: "It is further ordered, in addition to the powers heretofore vested in said receiver by the orders of this court, that he is hereby authorized to pay out of such fund, as such receiver, that may come into his hands, from the earnings and income of the property, or that he has been or may be authorized by this court to borrow for such purposes, all the debts due for labor and wages and for materials and supplies done and furnished to said defendant corporation for six months prior to his appointment as receiver. * * * It is further ordered that all matters and things set forth in the order appointing said Haskins temporary receiver, and also in the order heretofore granted by the court authorizing said receiver to borrow money for the purposes set forth in said order, be, and the same are hereby, ratified and reaffirmed, and made a part of this order, in so far as they are appropriate and proper." On the 31st of May, 1893, the Manhattan Trust Company filed its bill of complaint in the United States circuit court for the Northern district of Georgia. It alleged that it was the trustee of a mortgage executed by the Augusta Mining & Investment Company to secure an issue of $396,000 of first mortgage bonds; that the defendant corporation had made default in the payment of interest due upon the bonds; that by reason of such default the bonds had become due, under the terms of the mortgage; and that the complainant was entitled to a foreclosure of the same. The bill made special reference to the bill of complaint filed on October 12, 1892, by Joseph W. Reinhart and others, which has already been stated. Special reference was also made to the appointment of Haskins as receiver, and to the above-mentioned orders of court concerning said receiver. The bill alleged that the earnings of the Augusta Mining & Investment Company for the past year had been, and still were, greatly inadequate to meet and discharge the accruing obligations of interest upon its bonded indebtedness, or the payment of its current expenses, charges, and indebtedness. The bill also averred that said corporation was wholly insolvent. The bill prayed for the appointment of a receiver to the property of the corporation, and for the foreclosure of the mortgage.

On May 31, 1893, a motion for the appointment of a receiver on the bill of complaint of the Manhattan Trust Company, or to extend the receivership in the cause in which Reinhart and others were complainants, came on to be heard before the court; and, on the motion of counsel for the Manhattan Trust Company, it was ordered that the receivership of the property of the Augusta Mining & Investment Company, theretofore made, by the appointment of Haskins as permanent receiver, be extended to the second cause, and that Haskins be appointed and continued as receiver in the second cause, with all the rights and powers as such receiver in the second cause which were conferred upon him under the said decrees of the court entered in the suit by Reinhart and others, of date October 12, 1892, and October 31, 1892, respectively. Subsequently, on motion of the attorneys for the complainants in the above causes, the attorneys for the defendant consenting, the two causes were consolidated, and it was agreed that the final decree be taken in said causes as consolidated. On January 23, 1895, the decree of foreclosure was signed. The decree fixed the amount which the defendant corporation should pay into the registry of the court to

prevent foreclosure, and classified the same as follows: "First, a sufficient sum of money to cover the expenses of the receivership, including obligations and debts incurred by the receiver under the order and direction of the court, and the compensation of the receiver and his counsel, and any other preferential claims and debts that may be allowed by the court to parties to this cause, and the court costs;" second, the expenses of complainants, including counsel fees; third, the amount of the mortgage bonds. In case these amounts were not paid, the decree provided that the property be sold, and also provided for the payment of: "First, all court costs, and the costs of the master commissioner in making the sale under the decree; second, the payment of the fees of the receiver of the property, and his reasonable attorney's fees, to be fixed by the court, and all proper obligations incurred by him under the authority of the court, as the same shall be determined and allowed by the court." On August 2, 1897, a master in chancery was appointed by the court to report, among other things, upon all debts and claims against the defendant corporation and the receiver which were alleged to be prior in rank to the bonds secured by the mortgage made to the Manhattan Trust Company as trustee. The master found and reported that all parties holding receiver's certificates for indebtedness due by the Augusta Mining & Investment Company prior to October 12, 1892, have no priority over the mortgage bonds, but that all the debts contracted by the receiver since his appointment are entitled to a preference over the mortgage bonds. Joseph W. Reinhart, Phillip Van Volkenburgh, and others, all alleging themselves to be bondholders of the Augusta Mining & Investment Company, excepted to that part of the master's report which gave priority over the bonds to the debts contracted by the receiver since his appointment. The parties whose claims were postponed to the bonds by the master excepted to such postponement. No exceptions were taken by the Manhattan Trust Company. On February 28, 1898, the court made a decree by which it confirmed the master's report as to the debts which he had found to be prior to the mortgage bonds, but overruling the master as to the debts which he had found to be inferior to the mortgage bonds. The decree recited that: "The exceptions filed to the report of the master are overruled, except as hereinafter specified; and the report of the master, except as so specified, is hereby confirmed, and made the judgment and decree of the court. It appears from the report of the master that certain notes were made by the receiver, under orders of this court entered October 12, 1892, and October 19, 1892, in payment of debts against the Augusta Mining & Investment Company for wages of employés and for materials and supplies furnished to said company for six months prior to the appointment of the receiver, which notes are specifically set out in Schedule No. 3 of the supplemental report of the master. The master found in his report that these notes, made under said orders of this court, were not entitled to priority of payment over the bonds secured by the mortgage to the Manhattan Trust Company; and to this finding of the master each one of the parties holding said notes set out in Schedule No. 3, as above mentioned, filed exceptions. It is ordered that the exceptions so filed be, and the same are hereby, sustained and allowed, and that the holders of said notes take precedence, as receiver's expenses, in the fund arising from the sale of the property described in the mortgage to the said Manhattan Trust Company. It is further ordered and decreed that the fund arising from the sale of the property be distributed according to the priorities set out and fixed in the original decree of foreclosure."

H. E. W. Palmer, for appellants.

Alex. W. Smith, Alex. C. King, Jack J. Spaulding, and T. A. Arnold, for appellees.

Before McCORMICK and SHELBY, Circuit Judges, and PARLANGE, District Judge.

PARLANGE, District Judge (after stating the facts as above). All the claims in dispute in this case are just and proper in themselves, the only contest being as to their rank. The theory upon which the appellants have proceeded, both in the lower court and in this court,

is that the expenses of the receivership, and the debts for labor and supplies incurred by the Augusta Mining & Investment Company during the six months which preceded the appointment of the receiver under the Reinhart bill, should be paid out of the income and revenues of the corporation, and not out of the corpus, and also that the mortgage bonds are entitled to a priority over all such expenses and debts. The appellants are bondholders of the corporation, who have undertaken to proceed independently of the trustee of their bonds, and, it would seem, in opposition to the trustee's views of the correctness of the decree appealed from. These appellants are, in the main, the same parties who instituted or joined in the Reinhart bill, under which the receivership was inaugurated. The bill which they filed to obtain from the court the appointment of a receiver shows that the corporation was insolvent, and that it was even unable to earn its charges and expenses. If we are to believe the appellants, they asked the lower court to do an apparently impossible thing, and the court undertook to do it. The appellants' contention amounts to saying that the court, looking solely to the income and revenues of a corporation which was shown to be insolvent, and even unable to meet its charges and expenses, engaged in the task of maintaining and carrying on the business of the corporation, and of paying, not only its running expenses, but also its debts for labor and supplies incurred during the six months which preceded the appointment of the receiver. The Reinhart bill even prayed that the receiver be empowered to equip and operate other ore banks than those which were then being operated. It could not be contended seriously that, if the orders of the lower court had borne only on such revenues as might be expected from a corporation in the ruinous condition in which the Reinhart bill alleged that the Augusta Mining & Investment Company was, any one could have been found to lend money to the receiver. It may then be fairly said that Reinhart and others are attempting to show that they asked the court to undertake the receivership under impossible conditions. There were no limitations placed upon the temporary receiver as to payment out of revenues, in the order authorizing him to borrow money. This order was specially consented to by Reinhart and others. They then applied for the appointment of a permanent receiver, and upon that application the temporary receiver was appointed as permanent receiver, the previous order authorizing the temporary receiver to borrow money was affirmed, and the permanent receiver was directed to pay all debts for labor and supplies incurred during the six months preceding his appointment, not only from earnings and income, but also from such moneys as he was or might be authorized by the court to borrow for the purpose. Subsequently the Manhattan Trust Company, trustee of the mortgage, caused the receivership to be extended to the foreclosure suit, and it is plain that the trustee adopted all prior proceedings and orders. The decree of foreclosure again made it evident that the debts and expenses paid by the receiver were to outrank the mortgage. The appellants did not complain of the decree; and it should be specially noticed that the Manhattan Trust Company, which, as trustee of the mortgage, represents

the appellants as well as all other bondholders, has never complained of the action of the lower court in postponing the mortgage to the debts and expenses paid by the receiver. The trustee did not complain of the foreclosure decree, nor did it except to the master's report, nor has it appealed from the decree of February 28, 1898. It is not even intimated that the trustee has been derelict in its duty to protect the interest of the bondholders. It is plain that the trustee has acquiesced in the correctness of the decree appealed from.

Fosdick v. Schall, 99 U. S. 235, and other cases, have been cited to us by appellants' counsel, who urge that, under the doctrine of those cases, the lower court had no power to postpone the mortgage to the debts and expenses paid by the receiver. The case before us is not one in which the principles of the cited cases come into play. The present case is simply one in which the matters complained of have been consented to by the parties. There is no error in the decree appealed from, and it is therefore affirmed.