## In re McDAVID LUMBER CO.

(District Court, N. D. Florida. September 25, 1911.)

BANKRUPTCY (§ 348*)—WAGE LIENS—PRIORITY.

Bankruptcy Act July 1, 1898, c. 541, 30 Stat. 563, § 64b (U. S. Comp. St. 1901, p. 3447), providing that wages due to clerks or servants earned within three months before the action of bankruptcy proceedings, not to exceed $300 to each claimant, shall have priority of payment, does not merely prescribe the order of distribution of assets after satisfaction of liens existing against the property, but creates prior liens to the extent stated in favor of the servants designated, and is enforceable without reference to state statutes relating to the same subject.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 536; Dec. Dig. § 348.*]

In the matter of bankruptcy proceedings of the McDavid Lumber Company. On petition of William F. Lee to review a referee's ruling denying priority of liens for services rendered as defendant's book-

---

keeper as against certain chattel mortgages on the bankrupt's assets. Reversed.

Pattillo Campbell, for petitioner.
Blount, Blount & Carter, for export company.

SHEPPARD, District Judge. This cause comes here for consideration on petition of Wm. F. Lee for review of the ruling of C. L. Shine, Esq., referee in bankruptcy, and involves the question of priority of liens attaching to the lumber and other product of a sawmill plant in due course of administration in a court of bankruptcy.

The McDavid Lumber Company, bankrupt, was lately engaged in manufacturing lumber and operated a large plant when proceedings in bankruptcy were begun. The company was adjudicated a bankrupt in June, 1910. Wm. F. Lee was employed as bookkeeper for the company, and by his petition before the referee sought to declare his lien on the stock of lumber and fixtures of the company for wages due him for the month of April and a part of May, 1910, at the rate of $115 per month. It is disclosed by the petition that the stock of lumber, the greater portion of which was produced during Lee's employment, comprised the principal assets of the company. Three months prior to Lee's employment, to wit, on January 10, 1910, the McDavid Lumber Company executed a chattel mortgage, based upon the present consideration of $1, to the Hayward Export Company, embracing all the lumber and timber of whatsoever kind which should be manufactured at the mill of said company from the 1st of January, 1910, to the 1st of January, 1911; this mortgage provided that the export company should advance 80 per cent. of the value of the output of the mill each month, and further stipulated that the export company should be the selling agent of the lumber company for all its product, excepting interior stock. The advances to the extent of 80 per cent. were secured by a mortgage based upon the whole output, and included all the lumber and timber stored upon the yards of the company during the existence of the mortgage.

The further point is made by Lee's petition that the mortgage of the export company was not recorded until the 15th of April, 1910, 15 days after Lee's employment by the McDavid Lumber Company; but actual notice of its existence is nowhere negatived by the petition, although, as will later appear, notice of the mortgage is not material in view of the determination of the question certified to this court. Lee by his petition seeks to have his claim for wages declared a preference over the mortgage of the export company on the proceeds of the product embraced in the mortgage, and that the export company which has disposed of the lumber be required to pay his claim for wages.

The Hayward Export Company interposed a demurrer to Lee's petition, the first ground of which is only necessary to be considered at this time, viz.:

"(1) The allegations of the petition show that the rights of the Hayward Export Company under its mortgage and contract of sale are superior to the rights of petitioner in the proceeds of the lumber."

The referee upon the hearing before him sustained the demurrer, and it is this order which is certified here on petition of Lee for review.

The contest seems to have waged so far over the priority of the respective liens of contestants, the mortgage of the export company, and the statutory lien of the laborer as created by section 2198, Gen. St. Florida 1906, which provides:

"That liens prior in dignity to all others *accruing thereafter* shall exist in favor of bookkeepers, clerks, etc., upon the stock and fixtures and other property of merchants and corporations."

Whether the statutory lien in favor of Lee should be declared superior to the mortgage of the Hayward Export Company, which antedated the performance of any labor by Lee, was the question before the referee, and was decided by him in favor of the mortgage lien. If the question were to be settled by state statute and without reference to the order of distribution of the estates of bankrupts provided by the federal bankruptcy act, the referee may have decided rightly. It will be conceded that the bankrupt act (section 67d) recognizes liens generally in the priority precisely as the state law fixes them, when the bankruptcy act is silent, or where by its terms priority is left for state regulation. When, however, the lien of the laborer for his wages earned within three months of his employer's bankruptcy is given preference in the distribution of the assets of the estate, it is immaterial whether under the state law his claim is or is not superior to the mortgage lien. It was earnestly insisted at the argument that the bankruptcy act (section 64b) does no more than provide for the order of distribution of the assets after satisfaction has been made of valid liens recognized by section 67d. When Congress, however, provides the order of payment and gives preference to a certain class of claims, such as taxes, cost of administration, and wages in limited amounts for a definite time, such legislation can have no other effect in reality than to create a lien in favor of the claims thus preferred. Undoubtedly it was intended by Congress that when property of employers should be placed in bankruptcy and beyond the reach of those who had aided in its creation, to charge and impress such property to the limited extent noted with a preference by law second only to taxes and cost of administration. Those entering into contracts with employers of labor for manufactured product must contemplate the relation of the labor to the finished product and should be held to know that, in case bankruptcy overtakes the enterprise, the assets resulting from the administration of such trust shall be distributed in the course provided.

Nor does the adoption of this principle destroy the probity of contracts or work greater hardship to secured creditors than would fall unhappily to the lot of that creditor class who live from hand to mouth, if a different construction were adopted. The priority of laborers' claims when they are based upon productive or operating expense of a quasi public corporation is a salutary doctrine long established in this country predicated upon the theory of public interest and of public benefit as well as pecuniary advantage to the security holders; the operating expenses of such corporations are recognized by the courts as a first lien on the property of such corporations. Burnham

v. Brown, 111 U. S. 776, 4 Sup. Ct. 675, 28 L. Ed. 596; Southern R. Co. v. Carnegie Steel Co., 176 U. S. 257, 20 Sup. Ct. 347, 44 L. Ed. 458.

What substantial reason would justify any distinction in the protection the law secures to the flagman of the railroad train whose wages are preferred over the interest of the bondholder, and the laborer in the sawmill whose handiwork is a constructive force in the product of the plant, which not only pays the interest on the mortgage, but returns the investment?

That sound legal philosophy established by numerous and powerful decisions of the Supreme Court recognizing the priority of labor engaged in the service of quasi public corporations because of the public convenience and necessity of continued operation, fortunately, is being gradually and wisely extended to the legal preservation of the rights of the laborer whose toil produces the output which pays the interest and enhances the value of the mortgage security. L'Hote v. Boyett, 85 Miss. 636, 38 South. 1; Dickinson v. Saunders, 129 Fed. 20, 63 C. C. A. 666.

It was well said by the Court of Appeals of the First Circuit, in Dickinson v. Saunders, supra, discussing the effect of the federal bankruptcy act regulating priority:

"Turning, therefore, either to the local statute, or to what for the federal courts is the higher authority, the bankrupt act, the priority in favor of creditors of the class of interveners in this case is declared as a rule of administration, not only for quasi public corporations, but for all corporations, and in the federal statute for corporations and individuals."

It was further observed by the learned court in this instructive case that the statute of Massachusetts could not control administration in bankruptcy in the federal court.

When the order of distribution of a bankrupt estate has been expressly laid down by Congress that order should be observed by the federal court in administration in bankruptcy. As said by Collier in his admirable work on Bankruptcy ([7th Ed.] 742):

"The bankrupt act not only controls the state law in case of absolute conflict, but by its express legislation on these priorities excludes the state law altogether."

And again, as said by Judge Lowell, when both a state statute and the bankrupt act gives priority to the same class of debts, the bankrupt act supersedes the state law. Dickinson v. Lewis, 129 Fed. 20, 63 C. C. A. 666; In re Lewis (D. C.) 99 Fed. 935; In re Erie Lbr. Co. (D. C.) 150 Fed. 823; In re Tebo (D. C.) 101 Fed. 420.

It is clear that the trust fund arising from the administration is distinctly charged by the act in favor of wages to the extent provided by section 64b, and, if it cannot be said to constitute technically a lien, its effect is tantamount to any claim or privilege created by state statute. It will not be denied that, where liens have attached before bankruptcy administration and are not dissolved by the act, they will be respected as criteria in the order for distribution of the estate, except preferred claims under the bankruptcy act which unquestionably supersedes the

state law. In re Laird, 109 Fed. 557, 48 C. C. A. 538. It should be the policy of the law and the primary duty of society to protect the wages of the laborer in every contingency. Congress has indicated its purpose, and courts should declare the law.