## In re SEATTLE CUT GLASS CO.

(District Court, W. D. Washington, N. D. December 8, 1923.)

No. 6808.

1. **Bankruptcy �găm345 — Bankruptcy Act governs as to priority of claims.**

Bankruptcy Act, § 64b (Comp. St. § 9648), controls as to claims having priority, to the exclusion of state statutes.

2. **Bankruptcy ⟨găm184(1)—Validity of security given by bankrupt for a loan made in good faith is not affected by use made of the money.**

Validity of a chattel mortgage given by a bankrupt to secure a loan made in good faith is not affected by the fact that bankrupt used the money in making preferential payments to creditors.

In Bankruptcy. In the Matter of the Seattle Cut Glass Company, bankrupt. On review of orders of referee. Affirmed.

Review is sought to the allowance by the referee of the claim of the Rainier Valley State Bank in the sum of $1,500 principal and $40 interest on account of a loan evidenced by promissory note, secured by a chattel mortgage on assets belonging to the bankrupt, and to the denial of the claim of J. V. Prosser in the sum of $2,232.01 unsecured and $780 secured, as a prior lien under sections 1149–1153, inclusive, of Remington's Codes & Statutes of Washington, by the trustee and by J. V. Prosser, respectively.

The referee found:

That on the 26th of May, 1922, the bankrupt executed and delivered to the bank its promissory note for $1,500, due 30 days after date, with interest at 8 per cent. per annum. The note was duly signed by the bankrupt, by its president, and the debt was not paid at maturity, nor has any part of it been paid, except the sum of $50 as a credit owing to bankrupt at the date of adjudication.

That at the time of its acceptance and advancing the money, the bankrupt by its president and secretary, under the corporate seal, executed a chattel mortgage covering the personal property therein described,

situated in King county; that the mortgage was duly filed in the auditor's office of King county on the date of its execution.

That the loan was made and the mortgage taken in good faith.

That for more than a year prior to adjudication J. V. Prosser owned one-fourth of the capital stock of the bankrupt and was employed by the bankrupt to perform the duties of manager at a weekly salary of $30 per week; that he performed the duties of manager and also performed manual labor in the factory of the bankrupt, which included buffing of the glassware manufactured, and shipping the manufactured products; that about the 20th of May, 1922, the bankrupt closed its business and Prosser's services were discontinued.

That on June 6, 1922, on petition of a creditor, a receiver was appointed in the state court for the bankrupt, who thereupon qualified and took charge of the assets of the company; that Prosser performed certain services at the instance of the receiver and was paid for such services in full.

That Prosser duly presented his claim to the receiver during the period of the receivership.

That between December 24, 1921, and March 21, 1922, Prosser was paid by the bankrupt for services rendered, the sum of $456.69, which Prosser claims was pay on back salary for prior service.

That on September 7, 1922, an order of adjudication was entered and thereafter Prosser filed his claim of lien on the assets covered by the chattel mortgage, claiming laborer's lien under the provisions of sections 1149–1153, Remington's Codes & Stat. of Wash., and salary in the amount of $780 was claimed for the six months immediately preceding June 24, 1922; that the lien notice was filed in the auditor's office of King county September 12, 1922.

That no testimony was offered by Prosser on his behalf, nor was it shown what part of the $780 represented compensation for work performed for the bankrupt, other than included within his managerial or executive duties, nor was any segregation made in proof of claim.

That no wages or salary were earned by Prosser within three months prior to the date of the commencement of the bankruptcy proceedings.

It was then ordered that the secured claim of the Rainier Valley State Bank be allowed in the sum of $1,450, together with interest thereon at 8 per cent. from May 26, 1922, and the objections to the Prosser

claim were sustained and the claim for lien disallowed.

McClure & McClure, of Seattle, Wash., for trustee.

Hastings & Stedman, of Seattle, Wash., for claimant.

C. A. Riddle, of Seattle, Wash., for J. V. Prosser.

NETERER, District Judge (after stating the facts as above). Elaborate briefs were filed and many matters discussed which are not before the court. The issue is submitted upon the findings of the referee. After consideration of the briefs and the record before the court, I believe that the referee is right.

[1] Section 1153 of Remington's Code would have application if the funds were disposed of by the state court, but in this ·court, under section 64b of the Bankruptcy Act (Comp. St. § 9648), the classification of claims and order of payment are fixed. In concluding between a state law and the Bankruptcy Act, as to priority of the same class of debts, the Bankruptcy Act controls. Collier on Bankruptcy (1921 Edition) 1017; Black on Bankruptcy, 617–619; In re Crown Point Brush Co. (D. C.) 200 Fed. 882; In re McDavid Lumber Co. (D. C.) 190 Fed. 97; Dickinson v. Saunders, 129 Fed. 20, 63 C. C. A. 666; In re Slomka et al., 122 Fed. 630, 58 C. C. A. 322. To the same effect is McDermott v. Tolt Land Co., 101 Wash. 114, 172 Pac. 207. There is no provision of the Bankruptcy Act which authorizes the allowance of any part of this claim as preferred.

[2] The objection of the trustee to the claim of the bank emphasizes the use made of the funds after being borrowed from the bank, rather than the transaction with the bank. The funds, it is urged, were paid in satisfaction of claims which had been personally guaranteed by the president of the bankrupt corporation, and the president of the bankrupt corporation gave to the bank collateral to secure the bank in addition to the security given by the bankrupt. The fact that the money was applied to the payment of such claims would not of itself defeat the claim of the bank, since the money was furnished by the bank to the bankrupt in good faith. It may be that the payment of the claims by the bankrupt is a voidable preference, but that could not affect the validity of the loan or the security given. Nor would the taking of the additional collateral affect such loan.

The order of the referee is affirmed.