**Don M. DOWD and Marjorie A. Monje, for themselves and in behalf of all other persons similarly situated, Plaintiffs,**

v.

**FRONT RANGE MINES, INC., a Colorado corporation, D. Paul Snodgrass, John Deerksen and Paul R. Spencer, as surviving directors of Front Range Mines, Inc., a defunct corporation, Dorothy D. Brown and Robert S. Mitchell, Defendants.**

Civ. A. No. 8980.

United States District Court
D. Colorado.
June 14, 1965.

David C. Little and J. F. Little, Denver, Colo., for plaintiffs.

Dickerson, Morrissey & Dwyer, William F. Dwyer, Denver, Colo., for defendants D. Paul Snodgrass and Dorothy D. Brown.

Holland & Means, Robert E. Holland, Denver, Colo., for defendant John Deerksen.

Robert S. Mitchell, Denver, Colo., pro se.

DOYLE, District Judge.

The defendants herein have moved to dismiss the complaint and have raised questions of jurisdiction and venue which will be defined hereinafter.

The plaintiffs, citizens of Michigan and New York, have brought this action on behalf of Front Range Mines, Inc., a Colorado corporation. Plaintiffs have named as defendants, in addition to the corporation, John Deerksen, Paul R. Spencer and D. Paul Snodgrass, as surviving directors of the corporation, and have also named Dorothy D. Brown and Robert S. Mitchell, a former director of the corporation and also allegedly its attorney. Deerksen, Spencer and Mitchell are residents and citizens of Colorado, whereas Snodgrass and Brown are citizens of Louisiana.

In substance, it is alleged that in January, 1961, the defendant Brown was the holder of various notes of Front Range which were in default and that defendant Mitchell agreed to represent her in collecting these notwithstanding that he was also counsel for Front Range, to the knowledge of Brown and Snodgrass. A certain extension agreement was made between Brown and the corporation whereby the latter promised to not allow any encumbrance against the assets of the corporation until the indebtedness was paid in full. In turn, Brown extended the due dates on the notes and returned a certain deed to properties of the corporation, which deed was then in her possession.

According to further allegations the obligations as extended were in default in November, 1961, and at this time Mitchell, as attorney for Brown, started an action in the Denver District Court and at the same time prepared a confession answer on behalf of Front Range consenting to entry of judgment. This confession was signed by Deerksen as President of the corporation, and in December, 1961, consent judgment was entered.

It is further alleged that Brown has purchased various property of the corporation at Sheriff sales following the issuance of execution. It is alleged that Brown, Mitchell and Snodgrass acted in concert for the purpose of acquiring all corporate assets at a fraction of their real value. It is also alleged that rewards were promised to Deerksen for his cooperation. Plaintiffs demand that the defendants be enjoined from enforcing the state judgments and further pray that the sheriff's deeds be set aside and that a receiver be appointed to take charge of all of the corporate assets.

1. The first question is whether this Court has jurisdiction of the action on the basis of diversity of citizenship.

The contention of defendants is that Front Range is the real party in interest and should, therefore, be considered as a party plaintiff. If such alignment is made, jurisdiction, of course, would be defeated, Front Range being a Colorado corporation and some of the defendants also being residents and citizens of Colorado.

In diversity cases it is, of course, fundamental that the Court look to the actual interests of the parties rather than to the caption, and it is equally axiomatic that the corporation is the beneficiary in a shareholders' derivative action. Nevertheless, these considerations do not dictate invariable realignment of the parties so as to place the corporation in the position of plaintiff. It has been held, for example, that

where a corporation is under antagonistic control it will be considered a defendant for purposes of diversity,[1] and antagonism has been held to exist "Whenever the management refuses to take action to undo a business transaction or whenever * * * it so solidly approves it that any demand to rescind would be futile" or where "it is plain that the stockholder and those who manage the corporation are completely and irrevocably opposed on a matter of corporate practice and policy." Smith v. Sperling, 354 U.S. 91, 93, 77 S.Ct. 1112, 1115–1116, 1 L.Ed.2d 1205; Swanson v. Traer, 354 U.S. 114, 77 S.Ct. 1116, 1 L.Ed.2d 1221. The question thus boils down to whether the conditions in the principal case are such that the corporation can for purposes of diversity be considered a defendant.

It is noteworthy in this connection that there has been a failure to pay taxes and to file annual reports with the Secretary of State. The Board of Directors has not met in recent years because of the impossibility of obtaining a quorum. Notwithstanding these facts, it is concluded that Front Range is in this case appropriately aligned as a defendant.

█ The determinative fact is that the board, consisting of only three of a possible five directors, can not meet since Snodgrass refuses to attend meetings. Thus, the company could not, if it wished to do so, institute the present action. Consequently, it follows that for diversity purposes it is proper to treat Front Range as a defendant. Cf. Kartub v. Optical Fashions, Inc., (S.D.N.Y.1958) 158 F.Supp. 757, which reached an opposite conclusion but did so in a factual context wholly different from that which is here presented.

On the basis of the allegations which are here before us it is clear that the Board of Directors would not if it could do so, authorize the present action.

Therefore, this is a proper case for the granting of what has been termed "special dispensation" allowing the plaintiffs to align Front Range as a party defendant.

The motion to dismiss for lack of diversity should be, and it is hereby denied.

2. In view of the alignment of the parties, does the Court have venue to hear and determine the case?

In the instant connection defendants contend that Section 1391 of the Judicial Code[2] is violated by entertaining this action in that neither all of the plaintiffs nor all of the defendants resides in the judicial district where the action has been brought. Defendants further contend that there is not a compliance with Title 28 U.S.C. § 1401 which allows or requires (depending on the view taken) that the instant type of action be prosecuted in any judicial district where the corporation might have sued the same defendants.

We have here a case in which nonresidents of this district have instituted an action on behalf of a Colorado corporation and have named as defendants not only citizens of states other than Colorado, but also have named individual defendants residents and citizens of Colorado. Thus, if Section 1391, supra, is read and applied literally, neither all of the plaintiffs nor all of the defendants resides in the forum district. Therefore, only if Section 1401 furnishes an exception to the strict requirements of Section 1391 applicable in stockholders' derivative actions can venue be upheld in this district. If, as defendants contend, Section 1401 requires independent diversity it would follow that there would be no diversity between Front Range and the Colorado residents even if Front Range were to be realigned on the theory that its interests are primary and, therefore, it would be entirely inappropriate

---

1. Doctor v. Harrington, 196 U.S. 579, 25 S.Ct. 355, 49 L.Ed. 606; Venner v. Great Northern R. Co., 209 U.S. 24, 28 S.Ct. 328, 52 L.Ed. 666; Koster v. (American)

Lumbermens Mutual Casualty Co., 330 U.S. 518, 67 S.Ct. 828, 91 L.Ed. 1067.

2. Title 28 U.S.C. § 1391.

under Section 1401 that the action be prosecuted in this district.

It is our conclusion that Section 1401 was designed not as a jurisdictional requirement but rather as a venue provision and that it does not make independent jurisdictional demands. We note, however, that there is a conflict on this. The Third Circuit has held that Section 1401 imposes an independent jurisdictional requirement; that when a corporation is aligned as a plaintiff in a stockholders' derivative action there must be diversity between it and the individual defendants. See Schoen v. Mountain Producers Corporation, (3 Cir.) 170 F.2d 707, 5 A.L.R.2d 1226. On the other hand, the cases in the Southern District of New York hold that the section is a venue provision which does not impose a double diversity requirement. See Saltzman v. Birrell, D.C., 78 F.Supp. 778 (1948); Citrin v. Greater New York Industries, D.C., 79 F.Supp. 692 (1948); Birnbaum v. Birrell, D.C., 9 F.R.D. 72 (1948); Montro Corp. v. Prindle, D.C., 105 F.Supp. 460 (1952); Clay v. Thomas, D.C., 185 F.Supp. 809 (1960); Industrial Waxes, Inc. v. Int'l Rys. of Central America, D.C., 193 F.Supp. 783 (1961); Glicken v. Bradford, D.C., 204 F.Supp. 300 (1962); and see Beury v. Beury, (S.D.W.Va.1954) 127 F.Supp. 786, 788.

We hold that Section 1391, as modified by Section 1401, gives the Court venue. By recognizing that the true interest which is being advanced is that of the Front Range, it follows that the citizenship of the nominal plaintiffs is unimportant from a venue standpoint. Section 1401, as we read it, permits venue to be laid in this district because it is a judicial district where the corporation might have sued the same defendants. The problem is discussed by Wright, Federal Courts, Section 73, page 277, as follows:

"A special statute provides that a derivative action by a stockholder on behalf of his corporation may be prosecuted in any district where the corporation might have sued the same defendants. Though the statute seems clear enough, some courts have found surprising difficulty in construing it. The situation is this. Stockholders, citizens and residents of State X, bring a diversity action in State Y, naming as defendants the corporation on whose behalf they are suing, which is incorporated in State Y, as well as individuals claimed to have defrauded the corporation. Some of the individual defendants reside in State Y while others are from States A, B, and C. Under the general venue statute only State X would be a proper venue, since there is no single state in which all of the defendants reside. But State X is an inconvenient venue for many purposes; it would be far better to entertain such litigation in State Y where the corporation is chartered and its records kept. The language of the special venue statute for derivative actions would seem to permit laying venue in State Y. It is a district in which the corporation could have sued the individual defendants so far as venue is concerned, since it is the district where the corporation, the only plaintiff in such a hypothetical suit, resides. Most cases have so reasoned, and have held venue proper in State Y. A few cases have rejected this reasoning. They have argued that the corporation could not have sued the individual defendants in State Y because diversity would be lacking between the corporation and the individual defendants. This reasoning, as the leading case supporting it recognizes, introduces a jurisdictional element into a venue statute. Such a construction seems unnecessary, by denying venue in the most convenient district it leads to undesirable results, and it is hardly required by—indeed seems contrary to—the language of the statute."

The author thus concludes that in a situation such as the present one, Section 1401 is satisfied where the corpora-

tion "the only plaintiff in such a hypothetical suit, resides."

Based then upon our conclusion that Section 1401 does not impose an independent jurisdictional requirement, we conclude that the motion to dismiss for lack of venue should be, and is hereby denied.

3. The question whether the Court has jurisdiction to here grant injunctive relief against the enforcement of a state judgment.

Section 2283 of the Judicial Code provides:

"A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."

Defendants contend that the relief here sought is outside the scope of this court's power in that injunction is sought which would stay proceedings in the State court. Involved here, as already noted, is the execution of a judgment. Defendants rely upon the Supreme Court's decision in Toucey v. New York Life Insurance Co., 314 U.S. 118, 62 S.Ct. 139, 86 L.Ed. 100, which held that a federal court could not enjoin the enforcement of litigation in a State court. Following the Toucey decision, Section 2283 was enacted and, according to Professor Moore, the effect of Section 2283 is to allow a federal court to enjoin enforcement of a state judgment, if necessary, in aid of its equitable jurisdiction. See 1A, Moore's Federal Practice, 2d ed. ¶ 0.226, pp. 2623 through 2625.

We disagree with the contention of defendants that Section 2283, supra, does not modify the Toucey decision and we are mindful of the Supreme Court's later decision in Amalgamated Clothing Workers of America v. Richman Brothers (1954), 348 U.S. 511, 75 S.Ct. 452, 455, 99 L.Ed. 600. Amalgamated does not effect a return to the Toucey rule. It does not preclude a federal court from enjoining the enforcement of the state judgment in proper circumstances. We agree with Professor Moore's analysis of the Amalgamated, or Richman decision, which reads as follows:

"Then in 1955 came the Richman decision with a return to the narrowness of the Toucey philosophy. And there is subsequent authority that the Richman doctrine precludes a federal court from enjoining the enforcement of a state judgment. But Richman does not compel that result. It did not deal with the situation under discussion, but with a counter-federal injunction against an interlocutory state labor injunction; and held that the federal court had no jurisdiction for its injunction to act in aid of. But in the situation under discussion the federal court has, by hypothesis, both federal and equitable jurisdiction, and the injunction by historic equitable principles is in aid of that jurisdiction.

"Furthermore, after the Richman decision the Court decided Leiter Minerals [Leitner Minerals, Inc. v. United States, 352 U.S. 220, 77 S.Ct. 287, 1 L.Ed.2d 267] and held that § 2283 did not preclude an action by the United States to enjoin a state court proceeding, although § 2283 does not provide an exception for such a case. This is a necessary recognition that § 2283 cannot always be read literally. And, in any event, would authorize an action by the United States to enjoin the enforcement of a state judgment on the basis of established equitable principles.

"For reasons stated elsewhere, we believe that harmonious federal-state relationships are not impaired if it is held generally that a state court may enjoin the enforcement of a fraudulently obtained federal judgment; and, conversely, that, while a federal court will not permit relitigation of issues before it for the purpose of reviewing or correcting state judgments, it may, when

established chancery principles warrant, enjoin the enforcement of a fraudulently obtained state judgment." pp. 2623–2625.

■■ The cogent aspect, as pointed out by Professor Moore, is that the court has jurisdiction to grant injunctive relief where, as here, the judgment has been or is being obtained by fraud. This is, of course, the allegation in the present case. Consequently, it must be concluded that the complaint on its face at least, contains facts sufficient to permit this court to entertain the action.

The result here reached is in accord with the decision of the Court of Appeals in the pre-Toucey and pre-Section 2283 case of United States v. Mashunkashey, (10 Cir. 1934) 72 F.2d 847, rehearing denied 294 U.S. 724, 55 S.Ct. 551, 79 L.Ed. 1255.

4. Whether the complaint is sufficient as against certain of the individual defendants.

■ Defendant Snodgrass' contention that he is not a proper party to this action lacks merit. The complaint charges that Snodgrass had knowledge of the alleged collusion and fraud, and seeks an injunction as to him. As such, he is a proper party under the applicable law which is, as stated in 13 Fletcher Cyclopedia Corporations, § 5996, p. 549:

"* * * If a suit brought by a stockholder on behalf of himself and the other stockholders is based upon fraudulent or wrongful acts or neglect on the part of the directors or other stockholders, they must be made parties defendant, so that they may have an opportunity to defend, and so that redress or relief may be given against them, but if no relief is sought against them they are unnecessary. * * *"

■ That law is applicable to Deerksen's motion to dismiss as well. The complaint alleges that Brown and Mitchell "proposed rewards to Deerksen if he cooperated" in certain respects—but no relief is sought as to him. In light of the fact that no relief is sought

as against Deerksen, and for the further reason that directors are not indispensable parties in actions of this nature, unless they themselves are wrongdoers and relief is sought, Castner v. First National Bank of Anchorage, (9 Cir. 1960) 278 F.2d 376; McRoberts v. Independent Coal & Coke Co., 8 Cir., 15 F.2d 157, his motion to dismiss as to him should be granted. Leave to amend the complaint, if facts exist which would make him a necessary party is, of course, granted. The motions to dismiss are in all other respects, denied.

It is so ordered.