Harvey F. EUGE, Appellant,

v.

J. Earl SMITH, M.D.; City of St. Louis, Missouri; Alphonso J. Cervantes; Gary M. Gaertner; Alvin J. McFarland, Appellees.

No. 19640.

United States Court of Appeals
Eighth Circuit.

Dec. 10, 1969.

Harvey F. Euge, pro se.

Gary W. Brandt, Asst. City Counselor, City of St. Louis, St. Louis, Mo., for appellees Smith, Cervantes and Gaertner; Robert W. Van Dillen, Acting City Counselor, and Robert C. McNicholas, Assoc. City Counselor, St. Louis, Mo., on the brief.

Norris H. Allen, of Anderson, Gilbert, Wolfort, Allen & Bierman, St. Louis, Mo., for Alvin J. McFarland.

Before MATTHES, BLACKMUN and BRIGHT, Circuit Judges.

BLACKMUN, Circuit Judge.

Harvey F. Euge appeals pro se from the district court's denial of his application for writs of injunction and prohibition. Judge Regan's memorandum order is reported as Euge v. Smith, 293 F. Supp. 878 (E.D.Mo.1968). The named defendants are J. Earl Smith, Health Commissioner of the City of Saint Louis, Missouri; the City itself; the Mayor; the City Counselor; and Alvin J. McFarland, one of the judges of the Circuit Court of the City of Saint Louis.

The case centers on an alleged nuisance on property occupied by Euge on Michigan Avenue within the corporate limits of the City. The background chronology is revealing:

1. In July 1967 Mr. Euge instituted a suit (No. 91845-E) in the Circuit Court of the City of Saint Louis against Doctor Smith, the City, and the Mayor. Euge alleged that he was the tenant of the Michigan Avenue property; that the property was improved with buildings and was fenced; that he had stored a number of automobiles and other items there; that on June 8, 1967, he had been served with a letter from Health Commissioner Smith reciting that an inspection of the premises in May revealed an accumulation of refuse and the presence of rats; that the materials on the prem-

ises were not refuse; that there was no food or garbage there which would create a rat harborage; that the provisions of the city code under which Doctor Smith purported to act were unconstitutional; and that the commissioner's acts and threatened acts were illegal. Euge prayed for injunctive relief against the commissioner and those acting for him, for a declaration that the pertinent provisions of the city code were unconstitutional and void, and for damages.

2. The defendants in that action filed a response and a counterclaim alleging Euge's maintenance on the property for more than a year of a public nuisance and health danger consisting of a rat harborage, refuse accumulation, and a physical and health menace; his continuing refusal to abate those conditions despite repeated requests so to do; and his filing of a number of suits in the circuit court designed to frustrate the City's efforts to correct the conditions on the property. The defendants requested injunctive relief for the abatement and correction of the conditions.

3. Trial on the counterclaim took place before Judge Aronson on October 9 and 10, 1967. The court entered judgment on October 27 on the counterclaim. The judgment first recited that Euge's petition had been dismissed for his failure to secure costs. Judge Aronson then found that Euge was the tenant and occupant of the premises in question, and that for more than a year he had created and maintained there a rat harborage, an accumulation of refuse, an eyesore, and a physical and health menace to the public. The court concluded that the condition of the premises constituted a public nuisance. It ordered Euge within 30 days to remove from the premises the six vehicles there and all rubbish in the rear yard and to provide adequate safeguards against rat infestation, and enjoined him "to operate and maintain the premises * * * in a nuisance free and sanitary condition." The time for compliance was thereafter extended.

4. In December Euge filed a notice of appeal to the Saint Louis Court of Appeals.

5. In January 1968 the City filed its petition for an order to show cause why Euge should not be punished for contempt for contumacious disregard of the order of October 27. This matter came before Judge McFarland, one of the defendants in the present suit, and an order to show cause was issued.

6. In March Euge sought in the Supreme Court of Missouri a writ of prohibition to prevent Judge McFarland from proceeding with a hearing on the contempt citation. The application was denied.

7. On April 11 hearing on the order to show cause was held.

8. On May 10 Euge was adjudged and held in civil contempt and was committed to the city jail until he purged himself of that contempt. In his final judgment and order Judge McFarland found, among other things, that Euge clearly understood the meaning of the judgment of October 27; that he had access to a truck useful for hauling; that he was engaged in income tax work and was realizing income therefrom; that he was presently free from custody in a series of cases on a number of professional bonds and on a $300 cash bond he had posted; that he had filed pro se seven suits in the circuit court and posted surety for costs in those suits; and that he offered no sufficient excuse or justification for his refusal to comply with the judgment. The court authorized Euge, during his incarceration, to receive visitors and make telephone calls and to contract and arrange with others in order to purge himself of the contempt and, while in the sheriff's custody, to attend to any matter requiring his presence at the offending premises.

9. Later in May Euge sought a writ of habeas corpus from the Supreme Court of Missouri. He was permitted to file for the writ as a poor person, but

the application was denied on June 10 for failure to state a claim on which relief could be granted.

10. In June Euge applied for a writ of habeas corpus from the United States District Court for the Eastern District of Missouri. He was granted permission to file the application in forma pauperis, but relief was denied by Chief Judge Harper on July 12 for failure to exhaust state remedies.

11. On October 18, 1968, Euge and the defendants in the primary state court action (No. 91845–E) entered into a written stipulation, approved by Judge McFarland, the obvious purpose of which was to get Euge out of jail and to resolve the impasse as to the continuing nuisance. By that stipulation Euge, in consideration of the defendants' removal and abatement of the nuisance, agreed (a) to permit the defendants and their agents to enter the premises and remove and dump the articles adjudged a nuisance and to rat-proof the area, (b) that the cost of the removal, disposal, and rat-proofing be taxed as costs and be borne by the party or parties against whom final judgment was eventually rendered, and (c) not to interfere with the removal, disposal, and rat-proofing so authorized. Euge was thereupon released after having spent 141 days in custody.

12. Three days later, on October 21, Euge filed the present suit seeking nullification of the state court injunction and of its judgment of contempt, injunctive relief from the execution of the state court determinations, dissolution of the stipulation on the ground of duress, and restoration and replacement of all personal property removed from the premises. Federal jurisdiction was assertedly based on diversity of citizenship and amount in controversy and on the deprival of Euge's fourth, fifth, sixth, eighth, ninth, tenth, thirteenth, and fourteenth amendment rights. An order to show cause issued. The return of the defendants (other than Judge McFarland) questioned the existence of diversity jurisdiction, asserted 28 U.S.C. § 2283 as a bar to the action, and alleged that Euge should not enjoy his freedom under the stipulation and then not be bound by its terms. Judge McFarland's response similarly challenged diversity jurisdiction and asserted that all matters in controversy were presently pending in state courts of competent jurisdiction. All defendants moved to dismiss.

13. Judge Regan on November 8, 1968, consolidated the hearing on the merits with the hearing on the order to show cause. Without passing on the issue of the existence of diversity jurisdiction, he dismissed the federal action on the ground that 28 U.S.C. § 2283 deprived the court of jurisdiction to grant relief.

14. On December 17, 1968, Euge's appeal to the Saint Louis Court of Appeals was dismissed for failure to perfect the appeal.

This chronology indicates that there are grave questions here as to Euge's proper allegation of the requisite facts for diversity jurisdiction and as to the existence of such jurisdiction. However, as did Judge Regan, we bypass those questions and proceed directly to consider the effect of the anti-injunction statute, 28 U.S.C. § 2283. It reads:

> "A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."

This anti-injunction statute is an ancient one. It has its origin in the Act of March 2, 1793, ch. 22, § 5, 1 Stat. 333, 335, and "has been constantly observed". See Hull v. Burr, 234 U.S. 712, 723, 34 S.Ct. 892, 58 L.Ed. 1557 (1914); Essanay Film Co. v. Kane, 258 U.S. 358, 361, 42 S.Ct. 318, 66 L.Ed. 658 (1922); Leiter Minerals, Inc. v. United States, 352 U.S. 220, 225 n. 2, 77 S.Ct. 287, 1 L.Ed.2d 267 (1957); 1A Moore's Feder-

al Practice par. 0.208 (2d ed. 1965). It appeared later, in somewhat different phraseology, as Rev.Stat. § 720 (1874) and as § 265 of the Judicial Code of 1911. It assumed its present form in 1948. 62 Stat. 968.

■ The statute has been described as "comprehensive" in its prohibition unless a case "presents facts which bring it within one of the recognized exceptions." Hill v. Martin, 296 U.S. 393, 403, 56 S.Ct. 278, 283, 80 L.Ed. 293 (1935); Amalgamated Clothing Workers of America v. Richman Bros. Co., 348 U.S. 511, 75 S.Ct. 452, 99 L.Ed. 600 (1955); Evans v. St. Louis Housing Authority, 226 F.2d 750, 752–753 (8 Cir. 1955), cert. denied, 350 U.S. 993, 76 S. Ct. 542, 100 L.Ed. 859. Its purpose is to promote comity and to prevent friction between state and federal courts. Wells Fargo & Co. v. Taylor, 254 U.S. 175, 183, 41 S.Ct. 93, 65 L.Ed. 205 (1920); Oklahoma Packing Co. v. Oklahoma Gas & Elec. Co., 309 U.S. 4, 8–9, 60 S.Ct. 215, 84 L.Ed. 447 (1939); Toucey v. New York Life Ins. Co., 314 U.S. 118, 129, 135, 62 S.Ct. 139, 86 L.Ed. 100, 137 A.L.R. 967 (1941).

Despite some confusion as to the statute's precise boundaries, see Studebaker Corp. v. Gittlin, 360 F.2d 692, 697 (2 Cir. 1966); Wright, Federal Courts § 47, pp. 154–56 (1963), we readily conclude that Euge's attempt here to invoke federal court jurisdiction encounters an insurmountable barrier in § 2283. There is no aspect of fraud in the state court litigation. See Simon v. Southern Ry., 236 U.S. 115, 35 S.Ct. 255, 59 L.Ed. 492 (1915); Dowd v. Front Range Mines, Inc., 242 F.Supp. 591, 597 (D. Colo.1965). Indeed, Euge himself instituted the state action. There can be no claim that the state court is without jurisdiction. Obviously, the existence of a public nuisance and the desirability or necessity of its abatement are subjects peculiarly suited for state court jurisdiction. See Mo.Rev.Stat. §§ 96.050 and 192.290 (1959), V.A.M.S.; State ex rel.

Chicago, B & O R. R. v. Woolfolk, 269 Mo. 389, 190 S.W. 877, 878 (1916); Clark v. Crown Drug Co., 348 Mo. 91, 152 S.W.2d 145, 147 (1941); Crutcher v. Taystee Bread Co., 174 S.W.2d 801 (Mo.1943); City of Sturgeon v. Wabash Ry., 223 Mo.App. 633, 17 S.W.2d 616, 619 (1929); City of Fredericktown v. Osborn, 429 S.W.2d 17 (Mo.App.1968). Further, the present case is not one based on any of the civil rights acts which might place it in a somewhat confused posture with respect to § 2283. Compare Baines v. City of Danville, 337 F.2d 579 (4 Cir. 1964), cert. denied, 381 U.S. 939, 85 S.Ct. 1772, with Cooper v. Hutchinson, 184 F.2d 119, 124 (3 Cir. 1950), and see Dombrowski v. Pfister, 380 U.S. 479, 484, n. 2, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965); and Cameron v. Johnson, 390 U.S. 611, 613 n. 3, 88 S.Ct. 1335, 20 L.Ed.2d 182, 14 L.Ed.2d 702 (1968). And we find no indication—and none is suggested by Euge—that Congress has "expressly authorized" injunctive relief in a situation of the kind before us.

■ We therefore hold that Judge Regan was right in concluding that § 2283 deprived him of jurisdiction to render any of the relief Euge requested. The following authorities are supportive of the conclusion we reach here. Warriner v. Fink, 307 F.2d 933 (5 Cir. 1962), cert. denied, 372 U.S. 943, 83 S.Ct. 937, 9 L.Ed.2d 969; Levine v. Lacy, 344 F.2d 695 (4 Cir. 1965) (where § 2283 is not mentioned); Cunningham v. A. J. Aberman, Inc., 252 F.Supp. 602, 605 (W.D. Pa.1965), aff'd 358 F.2d 747 (3 Cir. 1966); Drexler v. Walters, 290 F.Supp. 150, 156–157 (D.Minn.1968); Mackay v. Nesbett, 285 F.Supp. 498, 502 (D.Alaska 1968); Yates v. Hodges, 269 F.Supp. 519, 523–524 (N.D.Miss.1967). See Pilkinton v. Pilkinton, 389 F.2d 32 (8 Cir. 1968), cert. denied, 392 U.S. 906, 88 S.Ct. 2057, 20 L.Ed.2d 1364.

This makes it unnecessary for us to pass upon any aspect of the stipulation by which Euge's release was effectuated

or upon what bearing, if any, the case of McNealey v. Rouse, 264 S.W. 383, 386 (Mo.1924), has upon the contempt judgment.

Affirmed.